**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| **CONNECTIONOPEN, INC.** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **SOURCE ELEMENTS, LLC** <br><br> **Defendant.** | **Civil Action No.** 25-cv-14029 <br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff ConnectionOpen, Inc. ("ConnectionOpen" or "Plaintiff") brings the following allegations and asserts the following claims against the above-named Defendant Source Elements, LLC ("Source Elements" or "Defendant").

## NATURE OF THE ACTION

1.      This is an action for Source Elements' willful and reckless statements disparaging ConnectionOpen's technology, in violation of federal and state law.

2.      This is also an action for Source Elements' direct and indirect infringement of ConnectionOpen's United States Patent Nos. 8,918,541 and 8,301,790 in violation of the United States Patent Act, 35 U.S.C. §§ 1 *et seq*., based on Source Elements' unauthorized making, use, offer for sale, and sale of its product, Source-Connect, in the United States.

3.      ConnectionOpen seeks preliminary and permanent injunctive relief to prevent Source Elements from continuing its harmful conduct. In addition, ConnectionOpen seeks monetary damages for Source Elements' disparaging statements and past and ongoing patent infringement.

## THE PARTIES

4.      Plaintiff ConnectionOpen, Inc. is a corporation organized and existing in the state of Nevada.

5.      Defendant Source Elements, LLC is a limited liability company organized and existing in the state of Illinois with its principal place of business located at 1222 Florence Ave, Evanston, Illinois 60202.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), because this is an action for patent infringement under 35 U.S.C. §§ 100 *et seq.* and thus arises under the patent laws of the United States. This Court additionally has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), because this is an action for product disparagement under 15 U.S.C. §1125 and thus arises under the Lanham Act.

7.      This Court has subject matter jurisdiction over ConnectionOpen's state law claims pursuant to 28 U.S.C. §1338(b) because they've been joined with a substantial and related claim under U.S. trademark law.

8.      This Court additionally has supplemental jurisdiction over ConnectionOpen's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

9.      Personal jurisdiction over Source Elements is proper because Source Elements purposefully availed itself of the privilege of conducting business and various activities within the state of Illinois including by establishing its principal place of business in the state of Illinois.

10.     Venue is proper in this District under 28 U.S.C. §§ 1400(b) because this is an action for patent infringement and Source Elements has an established place of business in this District,

including at 1222 Florence Ave, Evanston, Illinois 60202. Venue is also proper under 28 U.S.C. § 1391(b) because, on information and belief, a substantial part of the events or omissions giving rise to this action occurred in this District.

11.     Venue is also proper in this District under 28 U.S.C. § 1400(b) because this is an action for patent infringement and Source Elements has committed acts of infringement in this District and has a regular and established place of business in this District.

## THE CONNECTIONOPEN PATENTS

12.     On October 30, 2012, the United States Patent and Trademark Office ("USPTO") duly and legally issued United States Patent No. 8,301,790 ("the 790 Patent"), entitled "Synchronization of audio and video signals from remote sources over the internet." ConnectionOpen owns all rights, title, and interest in the 790 Patent. A true and correct copy of the 790 Patent is attached hereto as **Exhibit 1.**

13.     On December 23, 2014, the USPTO duly and legally issued United States Patent No. 8,918,541 ("the 541 Patent"), also entitled "Synchronization of audio and video signals from remote sources over the internet."  ConnectionOpen owns all rights, title, and interest in the 541 Patent. A true and correct copy of the 541 Patent is attached hereto as **Exhibit 2.**

14.     The technology disclosed in the 541 and 790 Patents (collectively, the "Asserted Patents") relates to an architecture and technology for a method for synchronizing multiple streams of time-based digital audio or video content from separate and distinct remote sources, so that when the streams are joined, they are perceived to be in unison.

15.     The technology disclosed in the Asserted Patents enables users located far away from each other (e.g., thousands of miles apart) to connect and interact as if they were in the same room.

16.     By way of non-limiting example, Figure 2 of both Asserted Patents portrays three separate clients involved in a session creation:



FIG. 2

17.     Each of the clients referenced above in Fig. 2 may be a musician. Each musician may be located in a different city. If two musicians are streaming their audio to a third musician, the arrival time of their respective streams may differ due to latency, making it difficult or impossible for all three musicians to play in unison.

18.     By utilizing Network Time Protocol (NTP), an Internet draft standard, formalized in RFC 958, 1305, and 2030, that provides precise and accurate synchronization of NTP clocks in computers all around the world, the audio stream from the musician that arrives first may be buffered and delayed for the extra amount of time it takes the streams of the other musicians to arrive. This allows the three musicians to play in unison.

19. The technology disclosed in the Asserted Patents was not routine or conventional. The USPTO examined the patented technology and concluded that no prior art, alone or in combination, disclosed or rendered obvious any of the claims of the Asserted Patents.

20. Various industry heavyweights have praised the technology covered by the Asserted Patents. Indeed, as stated by Star Wars voice actor Corey Burton:

> Thanks to ConnectionOpen's straightforward iPad iOS app, it's virtually the same as if I was right there on a Hollywood soundstage or major recording studio. There's hardly any lag between my microphones and the responses of producers, directors and production staff. We all feel perfectly 'at home' for recording sessions, and the audio fidelity is indistinguishable from the production facility's own hard-wired mics"

## RELATIONSHIP OF THE PARTIES

21. Like ConnectionOpen and the technology disclosed in the Asserted Patents, Source Elements' flagship product "Source-Connect" provides an architecture for synchronizing multiple streams of time-based digital content from separate and distinct remote sources.

22. ConnectionOpen and Source Elements are direct competitors and compete for customers in the remote connection software industry.

23. On information and belief, at least as early as 2013, Source Elements began making disparaging statements with regards to ConnectionOpen's technology. By way of non-limiting example, at the voiceover conference, "WOVOcon", in 2013, Source Elements' owner told various conference attendees that ConnectionOpen "didn't work" and "couldn't work." On information and belief, the WOVOcon 2013 attendees included potential customers of ConnectionOpen.

24. Evidently, the disparaging statements continued. On February 22, 2024, ConnectionOpen was notified that it had been selected as a winner of the National Association of Broadcasters (NAB) Pilot Innovation Challenge (the "NAB Winner Email"). A true and correct copy of the NAB Winner Email is attached hereto as **Exhibit 3**.

25.     The NAB Pilot Innovation Challenge recognizes companies or entities that "are poised to help broadcasters rise to some of the key challenges and opportunities they are likely to face over the next 2-3 years." In addition to a stipend, the winners receive "opportunities for recognition and networking with broadcasters." *See* **Exhibit 4**.

26.     Shortly after ConnectionOpen received the NAB Winner Email, ConnectionOpen CEO, Randy Morrison, received a phone call that ConnectionOpen was *not* a winner of the NAB Pilot Innovation Challenge. Mr. Morrison asked the caller to put the recission in writing. Mr. Morrison then received an email stating that ConnectionOpen was "not among the 3 winners, but that we would like to name you as an **honorable mention**. The finalist pool was very strong this year and it was a tough decision." (emphasis added). *See* **Exhibit 3**.

27.     On March 19, 2024, it was publicly announced that ConnectionOpen received an honorable mention in the 2024 NAB Pilot Innovation Challenge (the "2024 Announcement"). A true and correct copy of the 2024 Announcement is attached hereto as **Exhibit 5**.

28.     Tellingly, for the prior year, the 2023 NAB Pilot Innovation Challenge *only* announced the winners; there were no "honorable mentions." (the "2023 Announcement"). A true and correct copy of the 2023 Announcement is attached hereto as **Exhibit 6**. On information and belief, 2024 was the *only* year that the NAB Pilot Innovation Challenge named honorable mentions.

29.     Shortly after ConnectionOpen received the NAB Recission Email, ConnectionOpen learned from an individual affiliated with NAB that Source Elements was a sponsor at the 2024 NAB Pilot Innovation Challenge and demanded that ConnectionOpen not be listed as a winner.

30.     On information and belief, Source Elements made additional disparaging statements regarding ConnectionOpen contemporaneous with its demand that ConnectionOpen not be listed as a NAB Pilot Innovation Challenge winner.

31.     Relatedly, on information and belief, Source Elements has and continues to represent to customers that they are a "safe" alternative to ConnectionOpen.

## COUNT I

### Product Disparagement—15 U.S.C. §1125(a)(1)(b)

32.     ConnectionOpen realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

33.     Source Elements made material misrepresentations and misdescriptions of fact about the nature and character of ConnectionOpen's software, including telling potential customers that it "didn't work"; "couldn't work"; that Source-Connect is a "safe" alternative to ConnectionOpen; and that ConnectionOpen does not "help broadcasters rise to…key challenges and opportunities." On information and belief, these representations and misdescriptions have been continuous and ongoing.

34.     Source Elements made the representations in commerce and in the context of commercial advertising and promotion.

35.     On information and belief, Source Elements' conduct, as described above, has been willful, wanton, and reckless.

36.     ConnectionOpen has been damaged as a result.

## COUNT II

### Violation of the Deceptive Trade Practices Act of Illinois, 815 ILCS 510/2

37.     ConnectionOpen realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

38.     The advertising and promotion noted above disparages ConnectionOpen's software by falsely representing that the software does not work, is unsafe, and does not help broadcasters rise to key challenges and opportunities.

39.     On information and belief, Source Elements' conduct, as described above, has been willful, wanton, and reckless.

<u>**COUNT III**</u>

**Infringement of the 541 Patent**

40.     ConnectionOpen realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

41.     Source Elements makes, uses, markets, offers for sale, and sells the "Source-Connect" product in the United States:







42.     Source Elements advertises that Source-Connect solves the problem addressed in the 541 Patent: it "[e]liminates the traditional challenges of distance & disparate recording environments."

43.     Like the technology disclosed and claimed in the 541 Patent, Source-Connect provides synchronous delivery and playback of three or more electronic audio files from multiple clients in different locations having differing arrival latencies:



44.     Given that Source-Connect facilitates remote collaboration between users (e.g., voice actors, producers, engineers) by creating real-time audio streaming sessions, the sessions

9

must involve multiple clients connecting to a centralized coordination point (i.e., a session server) which manages communication metadata and enables users to discover each other.

45.     Source-Connect advertises "[s]ynchronized timelines", which are only achievable if all clients have time references synchronized to the same time base—a requirement typically fulfilled by Network Time Protocol ("NTP") or an equivalent.

46.     Thus, on information and belief, Source-Connect creates a session server having a list of Network Time Protocol (NTP) servers, or their equivalents, and passes the list to each client through the Internet so that each client will acquire that client's own time reference, as claimed in limitation 1(a) of claim 1 of the 541 Patent.

47.     Source-Connect users login using credentials tied to a user account and then join session with other users:



Thus, Source-Connect must enable a client application to provide authorization so that the client application enables each client to connect each client to each other client, as claimed in limitation 1(b).  Given that Source-Connect facilitates remote collaboration between users, the sessions must involve multiple clients connecting to a centralized coordination point (i.e., a session server). Thus,

on information and belief, each client additionally connects to a session server as claimed in limitation 1(b).

48. Source Elements advertises that Source-Connect's "[s]synchronized timelines…link timelines between multiple connections[.]" While Source Elements does not openly advertise utilization of NTP, such synchronization precision is likely achievable when each client maintains accurate wall-clock time, typically synchronized using NTP or an equivalent. Thus, on information and belief, each client has an NTP clock or equivalent which is shared with all clients, as claimed in limitation 1(b).

49. Source-Connect's architecture, which facilitates synchronized multi-party audio streaming, necessitates accurate clocking across clients. This is because Source-Connect does not function in true "real-time" across the globe without compensation for latency but rather achieves time-aligned stream integrity—again, Source Elements advertises that Source-Connect's "[s]synchronized timelines…link timelines between multiple connections[.]" Further, audio stream alignment depends on synchronized stream timing across all participants in a session. This likely necessitates (1) enabling an NTP timestamp adjustor of each client to acquire the NTP timestamp from all clients, (2) comparing a client's local timing against a shared reference, and (3) adjusting timestamps and buffer playback to maintain audio alignment. It further requires enabling the session server to calculate the distance or latency of each client and synch any NTP timestamp (or equivalent) of all clients, so that streams of the clients will be offset until each stream of a client is in synch with the stream of the furthest client. Thus, on information and belief, Source-Connect starts the NTP clock synchronized to the time stamp of its chosen NTP server and given to all clients, provides a timing adjustor for adjusting each client's NTP timestamp in the client application of all clients, enables the NTP timestamp adjustor of each client to acquire the NTP

11

timestamp from all clients, in the session and the session server, enables the session server to calculate the distance of each client and synch any NTP timestamp of all clients, so that streams of the clients will be offset until each stream of a client is in synch with the stream of the furthest client, as claimed in limitation 1(c).

50. Source Elements' representation that Source-Connect's [s]ynchronized timelines…link timelines between multiple connections" likely means that Source-Connect constantly adjusts the NTP timestamp changes in the network conditions, as claimed in limitation 1(d).

51. On information and belief, Source-Connect clients use local buffers to compensate for jitter and arrival discrepancies. Thus, on information and belief, Source-Connect likely includes a file calibrator in each client application including a buffer having a method for analyzing the difference in arrival latencies of streams by all clients, and a method for synchronizing the streams, by which the arrival latency of any client's stream may be increased so that all streams by all clients arrive at the same time, as claimed in limitation 1(d).

52. Source-Connect enables users to monitor, reroute, and control incoming and outgoing audio streams—a hallmark of an integrated audio mixer. Thus, Source-Connect likely includes a file calibrator in each client application including a mixer that returns each stream to all clients, as claimed in limitation 1(d).

53. Source-Connect coordinates timing across locations during sessions, likely by utilizing an NTP timestamp. Thus, Source-Connect likely includes a file calibrator in each client application including an NTP timestamp being the timing method of each stream, as claimed in limitation 1(d).

54.     On information and belief, receivers at each client and the session server receive packets of information from each other client as claimed in limitation 1(e):



And;



55.     Further, real-time synchronization requires that the incoming stream's timing metadata be recognized and used for stream alignment. Source-Connect's features such as Auto-Restore & Replace rely on knowing the exact placement of delayed packets:



This is only possible if each stream includes an originating timestamp. These timestamps must then be decoded by the receiver to position the stream within the buffer. Thus, on information and belief, each receiver decodes the NTP timestamp from each client and compares it with an NTP timestamp of the formalized Internet time standard, keeping a record for each client of the difference in time of the time stream from the formalized Internet time standard, the stream with the highest difference designated as the "delay reference" stream and the NTP timestamp from the delay reference stream is used as a reference time delayed NTP timestamp, as claimed in limitation 1(e).

56.     For the delay reference stream, it logically follows that no additional artificial buffering is required. Thus, the delay reference stream's data must be immediately decoded and rendered to the client having the delayed reference stream as claimed in limitation 1(f). It logically follows that other incoming streams are then decoded and paused until their NTP timestamp agrees with the delayed NTP timestamp so that all incoming streams are in sync with the delayed NTP timestamp and are therefore in unison with one another, as claimed in limitation 1(f).

57.     Source Elements also knowingly and intentionally induces infringement of claims of the 541 Patent in violation of 35 U.S.C. § 271(b). Source Elements has had knowledge of the 541 Patent and the infringing nature of Source-Connect at least as early as when this Complaint was filed and served. Despite this knowledge of the 541 Patent, Source Elements continues to

actively encourage and instruct its customers and end users (for example, through online instruction materials on its website) to use Source-Connect in ways that directly infringe the 541 Patent. Source Elements does so, knowing and intending that its customers and end users will commit these infringing acts. Source Elements also continues to make, use, offer for sale, sell the Source-Connect, despite its knowledge of the 541 Patent, thereby specifically intending for and inducing its customers to infringe the 541 Patent through the customers' normal and customary use of Source-Connect.

## COUNT IV

### Infringement of the 790 Patent

58. ConnectionOpen realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

59. Source Elements advertises that Source-Connect solves the problem addressed in the 790 Patent: it "[e]liminates the traditional challenges of distance & disparate recording environments."

60. Like the technology disclosed and claimed in the 790 Patent, Source-Connect provides synchronous delivery and playback of three or more electronic audio files from multiple clients in different locations having differing arrival latencies:



61.     Given that Source-Connect facilitates remote collaboration between users (e.g., voice actors, producers, engineers) by creating real-time audio streaming sessions, the sessions must involve multiple clients connecting to a centralized coordination point (i.e., a session server) which manages communication metadata and enables users to discover each other.

62.     Source-Connect advertises "[s]ynchronized timelines", which are only achievable if all clients have time references synchronized to the same time base.

63.     Thus, on information and belief, Source-Connect includes a session server having a master timestamp, said master timestamp used as a time reference by all participants, as claimed in limitation 1(a) of claim 1 of the 790 Patent.

64.     Source-Connect users login using credentials tied to a user account and then join session with other users:



Thus, Source-Connect must include a client application capable of connecting a participant to the session server and to other participants, as claimed in limitation 1(b). Given that Source-Connect facilitates remote collaboration between users, the sessions must involve multiple clients connecting to a centralized coordination point (i.e., a session server). Thus, on information and belief, each client additionally connects to a session server as claimed in limitation 1(b).

65.   Source Elements advertises that Source-Connect's "[s]ynchronized timelines…link timelines between multiple connections[.]" While Source Elements does not openly advertise utilization of NTP, such synchronization precision is likely achievable when each client maintains accurate wall-clock time, typically synchronized using NTP or an equivalent. Thus, on information and belief, each client application has a client timestamp and utilizes a formalized Internet time standard (the Network Time Protocol (NTP) or its equivalent) as the predictive successive approximation of the time of day for the client and the server, the client and server timestamp being synchronized with the master timestamp, as claimed in limitation 1(b).

66.   Source-Connect's architecture, which facilitates synchronized multi-party audio streaming, necessitates accurate clocking across clients. Indeed, Source Elements advertises that Source-Connect's "[s]ynchronized timelines…link timelines between multiple connections[.]"

Such a high precision schemes generally require polling to maintain microsecond-level sync. Thus, on information and belief, Source-Connect utilizes polling. Further, it is likely that Source-Connect increases the frequency of polling to achieve the most optimal microsecond-level sync. Thus, on information and belief, Source-Connect includes a timing mechanism that synchronizes the client timestamp in the client application of the other participants and increases the frequency of polling of the NTP so that the master timestamp and all client timestamps are synchronized to a precision of at least 10 milliseconds, as claimed in limitation 1(c).

67.     On information and belief, Source-Connect clients use local buffers to compensate for jitter and arrival discrepancies. Thus, on information and belief, Source-Connect likely includes a file calibrating mechanism having a buffer, said buffer having a means for analyzing the difference in arrival latencies in real time of files by all participants, and a means for synchronizing the files, by which the arrival latency of any participants file may be increased so that all files by all participants arrive at the same time, as claimed in limitation 1(d).

68.     Source-Connect enables users to monitor, reroute, and control incoming and outgoing audio streams—a hallmark of an integrated audio mixer. Thus, Source-Connect likely includes a file calibrating mechanism having a mixer that compiles the synchronized files into multiple files which are then returned to the participants, as claimed in limitation 1(d).

69.     Source-Connect coordinates timing across locations during sessions, likely by utilizing an NTP timestamp. Thus, Source-Connect likely includes a file calibrating mechanism having a delayed timestamp, said delayed timestamp being the timing means of the files after the files have been synchronized, as claimed in limitation 1(d).

70.     On information and belief, receivers at each client and the session server receive packets of information from each client as claimed in limitation 1(e):



And;



71.     Further, real-time synchronization requires that the incoming stream's timing metadata be recognized and used for stream alignment. Source-Connect's features such as Auto-Restore & Replace rely on knowing the exact placement of delayed packets:



This is only possible if each stream includes an originating timestamp. These timestamps must then be decoded by the receiver to position the stream within the buffer. Thus, on information and belief, the receivers decode the timestamps from each client and compare them with the timestamps of the master timestamp, keeping a record for each client of the difference in time of the time stream from the master timestamp, as claimed in limitation 1(e). Further, given that Source-Connect's "[s]ynchronized timelines…link timelines between multiple connections", the timestamp with the highest difference from the master timestamp must be used as a reference time delayed timestamp, as claimed in limitation 1(e).

72.     For the delayed reference stream discussed above, it logically follows that no additional artificial buffering is required. Thus, the delays reference stream's data must be immediately decoded and rendered to the client having the delayed reference stream as claimed in limitation 1(f). It logically follows that other incoming streams are then decoded and paused until their timestamp agrees with the delayed timestamp so that all incoming streams are in sync with the delayed NTP timestamp and are therefore in unison with one another, as claimed in limitation 1(f).

73.     Source Elements also knowingly and intentionally induces infringement of claims of the 790 Patent in violation of 35 U.S.C. § 271(b). Source Elements has had knowledge of the 790 Patent and the infringing nature of Source-Connect at least as early as when this Complaint

was filed and served. Despite this knowledge of the 790 Patent, Source Elements continues to actively encourage and instruct its customers and end users (for example, through online instruction materials on its website) to use Source-Connect in ways that directly infringe the 790 Patent. Source Elements does so, knowing and intending that its customers and end users will commit these infringing acts. Source Elements also continues to make, use, offer for sale, sell the Source-Connect, despite its knowledge of the 790 Patent, thereby specifically intending for and inducing its customers to infringe the 790 Patent through the customers' normal and customary use of Source-Connect.

## **PRAYER FOR RELIEF**

For the foregoing reasons, ConnectionOpen prays for relief and entry of judgment as follows:

A. A judgment in favor of ConnectionOpen that Source Elements has infringed, either literally or under the doctrine of equivalents, Patents-in-Suit;

B. A judgment in favor of ConnectionOpen that Source Elements has engaged in unlawful acts under 15 U.S.C. § 1125(a) for its disparaging and false statements about ConnectionOpen;

C. A judgment in favor of ConnectionOpen that Source Elements has violated Illinois, 815 ILCS 510/2 for its disparaging and false statements about ConnectionOpen;

D. A preliminary and permanent injunction prohibiting Source Elements from: (1) further acts of infringement of the Patents-in-Suit; and (2) making disparaging statements regarding ConnectionOpen;

E. A judgment and order requiring Source Elements to pay ConnectionOpen damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement of the Patents-in-Suit;

F.  A judgment and order requiring Source Elements to pay ConnectionOpen damages, costs, expenses, and pre-judgment and post-judgment interest for its disparaging statements;

G.  A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to ConnectionOpen its reasonable attorneys' fees against Source Elements; and

H.  A judgment and order that Source Elements' violation of Illinois, 815 ILCS 510/2 was willful and deliberate, and therefore, ConnectionOpen should be entitled to the costs of this action, and reasonable attorneys' fees for same pursuant to Illinois, 815 ILCS 510/3.

I.  Any and all other relief as the Court may deem appropriate and just under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, ConnectionOpen requests a jury trial on all issues so triable.

Dated: November 14, 2025                    Respectfully submitted,

*/s/ David L. Hecht*
David L. Hecht
Hecht Partners LLP
125 Park Avenue, 25th Floor
New York, NY 10017
Tel: 212-851-6821
E: dhecht@hechtpartners.com

David R. Bennett
Steven G. Kalberg
Direction IP Law
P.O. Box 14184
Chicago, Illinois 60614
Tel: (312) 291-1667
dbennett@directionip.com
skalberg@directionip.com

*Counsel for Plaintiff ConnectionOpen, Inc.*